UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| CRAIG A. COMANCHE | CIVIL CASE NO. 07-2101 |
| VS. | SECTION P |
| OUACHITA SHERIFFS OFFICERS, ET AL. | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

<u>REPORT AND RECOMMENDATION</u>

  Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on November 30, 2007, by *pro se* plaintiff Craig A. Comanche. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Ouachita Corrections Center (OCC), Monroe, Louisiana. He complains that he was wrongfully convicted of prison disciplinary rules violations; that he was a victim of retaliation; and, that he has been improperly confined to administrative segregation and denied his right of access to the courts. He has sued OCC Warden Don Wheelis, Lieutenants Powell, Kinard, and Campbell, Sergeants Stewart and Baker, Captain Murray, and Deputy Whitten. He prays for an unspecified amount of money for each day that he is held in administrative segregation. He also asks the court to punish and prosecute each defendant who violated his rights.

  This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous or for failing to state a claim for which relief might be granted in

1

accordance with the provisions of 28 U.S.C. §§1915(e)(2)(B)(i) and (ii) and 1915A(b)(1).

### *Statement of the Case*

Plaintiff is an LDOC inmate incarcerated in the E - dorm, Pod 15 at OCC. On October 30, 2007 two other LDOC inmates fought one another. One of the inmates sustained an injured jaw requiring medical attention. Dy. Whitton attempted to discover the identity of the injured inmate's assailant. He aggressively questioned the E - dorm inmates, but the inmates refused to cooperate in his investigation. Whitton threatened the inmates with loss of privileges (visitation, television, recreation time, hot water pot, telephone, and day time use of mattresses) should they refuse to identify the other combatant.

Plaintiff advised Whitton that he could not identify the other inmate and, further, that he would not identify the assailant even if he were able to because he would thereafter be branded a "snitch" and subject to reprisal from his fellow inmates. Plaintiff further told Whitton that he had done nothing to warrant the deprivation of privileges and that the imposition of "mass punishment" was an inappropriate sanction which violated the inmates' rights.

Plaintiff attempted to complain to Sgt. Stewart, but his complaints were ignored. Stewart then ordered prison staff to remove the dorm television and hot water pot and to deny inmates all privileges.

On October 30 - 31, plaintiff researched the law on the prison computer and drafted an administrative remedies procedure (ARP) grievance against Sgts. Whitton and Stewart accusing them of violating his rights to due process guaranteed under the Fourteenth Amendment. On the morning of October 31 plaintiff delivered the grievance to Deputy Kelly.  Approximately two hours later, prison staff – including Lt. Powell, Lt. Kinard, Lt. Campbell, Capt. Murray, Sgt.

Stewart, Sgt. Baker, Deputy Whitton, and Deputy Kelly – entered the dorm armed with Tasers,[1] shotguns, and batons. The officers again questioned inmates about the previous day's fight and Lt. Powell made a comment concerning an inmate who had threatened an officer. Inmate Davis then admitted that he was the other inmate involved in the fight and he was removed from the dorm. Plaintiff was likewise summoned and advised that he too was being removed from the dorm. Plaintiff asked Lt. Kinard why he was being moved and Kinard replied, "... because you're a smartass..."[2]

Plaintiff was escorted to Isolation Cell 220 by Deputy Kelly. The cell was occupied by another inmate who advised Kelly that he was supposed to be housed alone. Kelly disregarded the inmate's protest and placed plaintiff in the cell. The other inmate again complained. A short time later, Lts. Powell, Kinard, and Campbell, Sgt. Baker and Deputy Kelly arrived at Isolation Cell 220 armed with Tasers and a shotgun. Plaintiff was threatened with the shotgun and the complaining cell mate was Tasered and told that he had no say in where inmates were housed.

When the officers left, plaintiff requested medical assistance for his cell mate. Lt. Powell, Lt. Campbell and Sgt. Baker returned to the isolation cell and ordered the inmate to get up. When he refused, Sgt. Baker and Lt. Campbell applied the Taser to him again. The inmate was then escorted out of the isolation cell.

Plaintiff then filed a second ARP grievance; he complained that he was the victim of

---

[1] A Taser is "[a] weapon which fires barbs attached by wires to batteries, and causes temporary paralysis." The weapon was developed by Taser Systems, Inc., of Los Angeles, California. See Oxford English Dictionary, Second Edition, 1989, http://dictionary.oed.com/cgi/entry/50247435?single=1&query_type= word&queryword= taser&first=1&max_to_show=10

[2] A "smartass" or "smart alec" is a "would-be clever person; a 'know-all'... or a person who is ostentatiously or smugly clever." *Id.*,http://dictionary.oed.com/cgi/entry/50228314?query_type=word& queryword=smartass&first= 1&max_to_show=10&single=1&sort_type=alpha

retaliation for having filed the initial grievance. In this grievance plaintiff complained that he was the victim of "... intimidation that is psychological, cruel and unusual punishment and excessive force..." Later that day he was advised by Deputy Whitton that he was being charged with disciplinary rules violations including attempting to incite a riot, disrespect, and disobedience.[3] Plaintiff was given a copy of the charges.

Lt. Powell responded to his two ARP grievances on November 1, 2007. Plaintiff rejected the response and filed a second step grievance. On November 2, 2007 Lt. Kinard responded and plaintiff again rejected the response and appealed the ARP on November 5, 2007. (According to plaintiff, he has not received a response to this third stage appeal.)

On November 6, 2007, plaintiff was taken to disciplinary court to answer his charges. The charge of attempting to incite a riot was dismissed but the disciplinary hearing board, composed of Lt. Powell and Sgt. Baker, found him guilty of disrespect and disobedience. Plaintiff was sentenced to serve 14 days in lock down. Plaintiff claims that he should have been released from this sentence by November 15; however, he remained in lock down as of November 28, the date he signed his complaint. On the same date plaintiff submitted an ARP grievance complaining about his extended stay in lock down and about the conditions of his confinement in Isolation Cell 174. [doc. 1, p. 54]

Plaintiff signed his complaint on November 28; it was received and filed on November

---

[3] According to the OCC's Handbook supplied by plaintiff, "disobedience" is defined in pertinent part as follows: "Prisoners must obey direct verbal orders cooperatively and promptly, not debate, argue or ignore them before obeying." Exhibit A, OCC Inmate Handbook, Rule 4, at doc. 1, p. 20. "Disrespect" is proscribed as follows: "No prisoner shall make a verbal or written derogatory or degrading remark about an employee. Employees shall not be subjected to insults, un-warranted and un-necessary remarks, or any other clearly intrusive behavior when in the performance of their proper duties. Employees shall not be subjected to unsolicited, non-threatening or abusive conversation, correspondence or phone calls ... No prisoner shall curse an employee." Exhibit A, OCC Inmate Handbook, Rule 6, at doc. 1, p. 21.

30, 2007. Plaintiff argues three claims. Plaintiff contends that (1) the denial of certain inmate privileges, which had been granted by prison regulations, and in which plaintiff had a reasonable expectation, violated the due process clause of the United States Constitution; (2) plaintiff was the victim of retaliation for filing an ARP on October 31, 2007 when he was falsely charged with the offense of "attempt to incite a riot" which charge was ultimately dismissed; (3) plaintiff was the victim of continued retaliation based upon his continued confinement in lock down following the expiration of the disciplinary sentence, and while thus confined, he was denied access to the courts.

## *Law and Analysis*

### *1. Initial Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986). District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has provided a detailed description of the legal theories which he claims entitles him to relief; he has provided a detailed recitation of the facts supporting those theories. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted.

## 2. Liberty Interest

By virtue of a valid criminal conviction and subsequent legal confinement, a prisoner loses his expectation of liberty. See *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Nevertheless, plaintiff implies that his due process rights were violated when prison officials deprived him of certain privileges in which he claimed a "liberty interest." (Plaintiff's pleading suggests that certain specific privileges – visitation, television, recreation

time, hot water pot, telephone, and day time use of mattresses – were denied to <u>all</u> of the inmates housed in E - dorm's Pod 15 from some unspecified time on October 30 (when the inmate fight occurred) until some unspecified time on October 31 (when inmate Davis confessed to being the second combatant). He further implies that all of these privileges were denied to him as a result of his disciplinary rules convictions and assignment to Isolation Cells 220 and 174.)

These allegations, taken as true for the purposes of this Report, fail to state a claim for which relief might be granted pursuant to 42 U.S.C. §1983 because "[t]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The federal jurisprudence holds, that while the states may under certain circumstances create rights that implicate Due Process, such rights are limited to freedom from restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Thus, relying on *Sandin*, the Fifth Circuit has found that "'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.' " *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due process rights).. The Fifth Circuit has also rejected a state prisoner's claim that the additional restrictions imposed on those in administrative segregation violated his due process rights. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (per curiam). Therein the court stated " 'absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply

7

does not constitute a deprivation of a constitutionally cognizable liberty interest." ' *Id.* at 580 (quotation omitted).

In other words, when a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). Thus, "... mere[ ] changes in the conditions of [ ] confinement ... do not implicate due process concerns." See *Madison*, 104 F.3d at 768; see also *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications."). Plaintiff's claims regarding his loss of privileges and his confinement in lock down are not "atypical" and thus fail to state a claim for which relief might be granted.

### *3. Retaliation*

Plaintiff also claims that prison officials retaliated against him when he filed his ARP on October 31, 2007. According to plaintiff, prison officials falsely accused him of attempting to incite a riot in retaliation for filing the October 31 ARP grievance. Further, he claims that prison officials again retaliated against him for filing grievances by keeping him confined in lock down well past the expiration of his disciplinary sentence.

It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the constitution. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation.

Causation requires a showing that "but for the retaliatory motive the complained of

incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997) (quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997); *McDonald v. Steward*, 132 F.3d 225 (5th Cir. 1998). "The inmate must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.1999).. "The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084(1996)).

Plaintiff's claim that his disciplinary charges and convictions were acts of retaliation, are unsupported by the record. As shown above, in order to establish retaliation, plaintiff must show that a retaliatory adverse act occurred. He claims that he was charged with attempting to incite a riot, however, he also admits that this charge was dismissed and he suffered no adverse consequences as a result of the charge.[4] Indeed, it appears that he was sentenced to lock down as a result of his other disciplinary convictions. Thus, plaintiff has not shown that the disciplinary action would not have been filed but for a retaliatory motivation. *Woods*, 60 F.3d at 1166.

For the same reason, his claim that his continued detention was an act of retaliation, fails. As shown above, in order to state a retaliation claim, he must show that "but for" the exercise of a specific constitutional right, the alleged retaliatory act would never have occurred. According to

---

[4] Plaintiff claimed that he "... was clearly retaliated against for the filing of an ARP on the morning of 10/31/07 at 6:00 a.m. against Sgt. Darrin Stewart and Dep. Vance Whitton by being wrote-up on false disciplinary charges of 'Attempt to Incite a Riot' at 5:30 p.m. on 10/31/07 24 hours after said incident had occurred. Furthermore when plaintiff was taken to Disciplinary Court on these charges on 11/6/07 the 'Attempt to Incite a Riot' was dismissed and the plaintiff was found guilty on Disobedience and sentenced to 14 days in Administrative Segregation with credit for time served. Plaintiff's sentence expired on 11/15/07, however he is still at present in Administrative Segregation." [doc. 1, p. 9]

9

the pleadings, plaintiff remained in lock down under orders from Captain Murray, yet Captain Murray was not accused of any wrongdoing in any of plaintiff's grievances. In other words, the pleadings do not establish any causative link between the filing of the grievances and plaintiff's continued detention in lock-down. Consequently, plaintiff's retaliation claim lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### *4. Access to Courts*

Finally, plaintiff claims that during his extended stay in lock down, he has been denied his right of access to the courts.   In particular plaintiff claims that he has been denied "... anymore law  work, D.O.C. ARP forms..." or the assistance of the trustee law librarian or access to the law library.

With regard to the allegation that he has been denied the right to participate in administrative remedies procedures, plaintiff fails to state a claim for which relief might be granted.  Prisoners do not have a constitutionally protected right to a grievance procedure. See, e.g., *Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, J., concurring) (applauding the adoption of grievance procedures by prisons, but expressly declining to suggest that such procedures are constitutionally mandated); When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's failure to comply with appropriate grievance procedures. See *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 (per curiam).

In addition, the facts alleged simply do not support plaintiff's assertion that he has been

denied his right of access to the courts. The right of access to the courts assures that no prisoner will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *Norton v. Dimazana*, 122 F.3d 286, 289 (5th Cir.1997).

However, prison officials have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims. See *Lewis v. Casey*, 518 U.S. at 356, 116 S.Ct. at 2182, ("Of course, we leave it to prison officials to determine how best to ensure that inmates... have a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or conditions of confinement.")

Plaintiff's allegations, construed liberally and all taken as true for the purposes of this review, fail to demonstrate that the defendants denied him access to the courts as that term is defined in the foregoing cited jurisprudence. As stated above, the Supreme Court has not extended the right to access the courts to encompass any more than the ability of an inmate to prepare and transmit a necessary legal document to a court. *Brewer v. Wilkinson*, 3 F.3d at 821. See also *Lewis v. Casey*, 518 U.S. at 349-355, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996). Clearly, plaintiff has not been denied that right.

Further, even assuming that plaintiff would be able to demonstrate that the defendant somehow deprived him of his constitutional right of access to the courts, he must still allege facts to establish that he suffered some prejudice as a result of the deprivation. That requirement has long been recognized by Supreme Court and Fifth Circuit jurisprudence. See *Lewis v. Casey*,

518 U.S. at 350-355, 116 S.Ct. at 2179- 81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988). In *Lewis v. Casey*, the Court noted that its prior access to courts jurisprudence "...did not create an abstract, freestanding right to a law library or legal assistance...", and that "...an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense..."

Plaintiff has wholly failed to allege any <u>specific</u> facts establishing that he was <u>actually prejudiced</u> in connection with any pending or contemplated legal proceeding by any alleged act or omission by any of the named defendants herein. Because plaintiff has presented no fact-specific allegations establishing that he was ever actually prejudiced in connection with any actual or proposed legal proceeding, his claims do not provide a basis for recovery under § 1983. Plaintiff has not shown that the actions of the defendants inhibited him from filing a non-frivolous complaint.

*5. Conclusion*

Based upon the foregoing,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint (including his prayer for injunctive relief) [doc. 1] be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted pursuant to the provisions of 28 U.S.C. §§1915 and 1915A.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved

by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 17th day of January, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE